UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANNY R. RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00225-SEB-DML |
| | ) | |
| THE GEO GROUP, | ) | |
| WARDEN, | ) | |
| NCCF, | ) | |
| FRENCH Mrs., | ) | |
| OWENS Mrs., | ) | |
| ADAMS Capt., | ) | |
| SEYE Sgt., | ) | |
| NDAIYE Sgt., | ) | |
| MOORE Ms., | ) | |
| JOHN DOE #1, | ) | |
| JOHN DOE #2, | ) | |
| JANE DOE #1, | ) | |
| MOORE Mr., | ) | |
| BETTERS Mr., | ) | |
| GARD, | ) | |
| JOHN DOE #1 Sgt., | ) | |
| REED Mr., | ) | |
| WEXFORD OF INDIANA, | ) | |
| HORD Mrs., | ) | |
| WILLIAMS Mrs., | ) | |
| JANE DOE #2 Nurse, | ) | |
| JANE DOE #3 Nurse, | ) | |
| JANE DOE #4 Nurse, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER SCREENING COMPLAINT
AND DIRECTING SERVICE OF PROCESS**

Indiana Department of Correction (IDOC) inmate Dany R. Richards commenced this 42 U.S.C. § 1983 action on January 26, 2021 and was granted leave to proceed in forma pauperis on February 9, 2021. Dkt. 6. The Court now screens the complaint and makes the following rulings.

1

# I.
# Screening Standard

Because the plaintiff is a prisoner, his complaint is subject to the screening requirements of 28 U.S.C. § 1915A(b). This statute directs that the Court shall dismiss a complaint or any claim within a complaint which "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* To satisfy the notice-pleading standard of Rule 8 of the Federal Rules of Civil Procedure, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and quoting Fed. R. Civ. P. 8(a)(2)); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (same). The Court construes *pro se* pleadings liberally and holds *pro se* pleadings to less stringent standards than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

# II.
# The Complaint

The complaint names seven John or Jane Doe defendants and sixteen identifiable defendants: (1) The GEO Group; (2) Warden; (3) NCCF; (4) Mrs. French; (5) Mrs. Owens; (6) Capt. Adams; (7) Sgt. Seye; (8) Sgt. Ndaiye; (9) Ms. Moore; (10) Mr. Moore; (11) Mr. Betters; (12) Gard; (13) Mr. Reed; (14) Wexford of Indiana; (15) Mrs. Hord; and (16) Mrs. Williams.

At all times relevant to the complaint, the plaintiff was housed at New Castle Correctional Facility (NCCF). He has since been transferred to Indiana State Prison. The plaintiff's complaint sets out his claims in detail. The Court summarizes them here.

The plaintiff has had his entire colon and a large portion of his large intestines and rectum removed. He has an ileo-anal pouch and suffers from clostridium difficle (C. diff.), a contagious bacterial infection. On December 4, 2019, the plaintiff was transferred from Wabash Valley Correctional Facility to NCCF. He immediately informed an NCCF correctional officer that he needed to be seen by the medical department and should not be placed in a cell with another inmate because he had C. diff. Health Care Administrator ("HCA") Ms. Hord was standing nearby, but she said he needed to complete a health care form to be seen by medical staff and that he was not required to share his confidential medical information with other inmates.

An unnamed officer escorted the plaintiff to the MHU (the Court construes this as the Mental Health Unit). The plaintiff asked the officer to take him to the MHU supervisor because putting him a cell with another inmate would put him and the other inmate in harm's way. The escort officer responded that he had to place the plaintiff in his assigned cell, but that he would request that the unit sergeant come to the plaintiff's cell.

When he was placed in his cell, he immediately informed his cellmate of the situation and explained that he was trying to get placed in a single cell. After no one came to the cell within 30 minutes, the plaintiff pushed the intercom button and asked to see medical staff and a unit supervisor. Approximately twenty minutes later, an officer responded on the intercom and told the plaintiff to submit a healthcare request form. The plaintiff informed the officer of his C. diff. infection and stated that he required immediate attention.

Approximately fifteen minutes later, Sgt. Seye, Sgt. Ndaiye and Officer Ogike came to the plaintiff's cell. The plaintiff informed the officers of the situation. Sgt. Seye told the plaintiff that a one-man cell was a luxury and that the plaintiff and his cellmate would have to work out their problems. The plaintiff then told the officers that if he was forced to, he would harm himself so

3

that he would be removed from his cell and not risk infecting his cellmate. Sgt. Ndaiye took out his can of mace and said "Please do me a favor. I need a good work-out so start acting out." The plaintiff then picked up a razor blade from the floor and again asked to be placed in a cell by himself until he was evaluated by medical staff. Sgt. Ndaiye then put on a pair of latex gloves, said he was safe, and told the plaintiff to start cutting himself. The plaintiff made two long cuts to his left arm. Sgt. Seye opened the cuff port and told the plaintiff to cuff-up. The plaintiff complied and he was taken to a nurse who cleaned his wounds and told him that, if she had known there was an inmate claiming to have C. diff., she would have immediately placed him in quarantine and tested his stool.

The plaintiff was then taken to the infirmary and received stitches in his arm. While at the infirmary, he spoke with Mrs. Williams, a mental health worker. He assured her that he did not want to harm himself and that he only did it because the officers in his unit refused to take precautionary measures to protect his new cellmate, and thus put him at risk of being assaulted by the cellmate. Officer Ogike then informed the plaintiff that he would be placed in a single cell in segregation. He was stripped of his clothing and placed on suicide watch on the order of Mrs. Williams even though he told her he was not suicidal.

While on suicide watch, the plaintiff was deprived of clothing, showers, soap, a water cup, and all other possessions. Mrs. Williams visited the plaintiff the next day and the plaintiff asked to be taken off suicide watch because he had no intent to harm himself. He also asked for toilet paper and informed Mrs. Williams that it was particularly unsafe to leave him without toilet paper or soap due to his C. diff. infection. Mrs. Williams declined to remove the plaintiff from suicide watch but had him transferred to OHU where he was provided with a suicide jacket. Sgt. Ndaiye escorted the plaintiff to a suicide cell, placed him face first into a wall in the cell and removed the

ace bandage on the plaintiff's arm, ripping out several stitches and reopening his wound. The plaintiff asked to be seen by medical staff because his wound was bleeding. He also asked if he could clean the cell because there was human feces on the toilet and floor. Sgt Ndaiye denied both requests.

For the next several days, many of the defendants and other unknown officers and nurses visited the plaintiff's cell and denied him food, water, medication, and access to soap and toilet paper.

On December 6, 2019, Mrs. Williams visited the plaintiff shortly after 10:10 am and asked how he was doing. He said he was being treated worse than a vicious animal because she placed him on suicide watch even though he informed her that he did not want to harm himself. Mrs. Williams said that his treatment was due to Geo Group's policy rather than Wexford's and that she was sorry. The plaintiff then asked her to remove him from suicide watch so that he could shower, clean himself, have toilet paper, and eat and take his medications.

Shortly after 6:00 pm, Mr. Moore and Mr. Better came to the plaintiff's cell and told him that they had been briefed on his situation and that he should not press the intercom button to ask for soap or toilet paper. At approximately 7:30 pm, the plaintiff pushed his intercom button and asked to see medical because had had just had a bowel movement containing blood. Mr. Moore came to the plaintiff's cell and told him not to press the intercom button unless it was a medical emergency.

Throughout the night of December 6, 2019, Mr. Moore and Mr. Betters harassed the plaintiff by constantly turning the light in his cell off and on and by making inappropriate comments such as "see if your tongue is long enough to wipe your ass" and threatening to stick a roll of toilet paper in his anus and a bar of soap down his throat. Dkt. 1 at 22. Mr. Moore and

Mr. Better continued to torment the plaintiff and refused to allow him to clean himself or his cell. Many of the named defendants continued to deny the plaintiff soap, toilet paper, and food. After several days of this treatment, Sgt. Martin, not a defendant in this action, visited the plaintiff for the first time On December 9, 2019. When he learned what was happening, Sgt. Martin ensured that the plaintiff was given a shower, a clean cell, food, and medication.

The plaintiff requested his legal papers and received some of them, but he was forced to draft a surreply in one of his cases without the appropriate documents. On December 10, 2019, the plaintiff filed informal grievances about his treatment with Capt. Adams and Assistant Warden French. He also sent a letter to HCA Hord to ask her to review the plaintiff's medical history and inform Capt. Adams and Assistant Warden French how contagious C. Diff. is.

On December 17, 2019, the plaintiff's toilet overflowed. He pressed his intercom button to request a mop and plunger, but Mr. Moore and Mr. Better just laughed at the plaintiff, shut off his water, denied him a mop and plunger, and denied his request to be moved to a clean cell. The plaintiff completed another grievance to Capt. Adams. Later, when Ms. Moore made her rounds, she brought the plaintiff a mop and plunger. Sgt. Martin later moved the plaintiff to another cell.

Finally, the plaintiff alleges that several items of his personal property were missing when it was finally returned to him. He seeks injunctive relief and compensatory and punitive damages.

### III.
### Discussion of Claims

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

#### A. John and Jane Doe Defendants

The plaintiff's claims against unknown John Doe or Jane Doe defendants must be **dismissed**. "[I]t is pointless to include [an] anonymous defendant [ ] in federal court; this type of

6

placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (internal citations omitted). Should the plaintiff identify any of these defendants through discovery, he may move to amend his complaint to add claims against them.

### B. Claims Dismissed for Lack of Factual Allegations

All claims against the Warden, Ms. Owens, Capt. Adams, and Assistant Warden French are **dismissed** for failure to state a claim. "For constitutional violations under § 1983 or *Bivens*, a government official is only liable for his or her own misconduct." *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (citation and quotation marks omitted). Thus "[a] damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *see Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'") (citation and quotation marks omitted). The complaint contains no factual allegations that the Warden or Ms. Owens were personally involved in the plaintiff's placement, medical treatment, or any other aspect of his treatment during the events alleged in the complaint. The only factual allegations against Capt. Adams and Assistant Warden French are that the plaintiff filed grievances addressed to them after he was placed in a new cell by Sgt. Martin. There is no allegation that these defendants were personally involved in violating the plaintiff's constitutional rights.

### C. Claims against NCCF

All claims against NCCF are **dismissed** because the prison facility is a non-suable entity. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("[T]he district court was correct that, in listing the Knox County Jail as the sole defendant, Smith named a non-suable entity.").

### D. First Amendment Retaliation Claims

The First Amendment retaliation claim against Mr. Moore and Mr. Betters is **dismissed** for failure to state a claim. To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). Here, the plaintiff has not alleged that he engaged in First Amendment activity, nor that Mr. Moore and Mr. Betters' behavior was motivated by that activity.

### E. Claims against Wexford of Indiana, LLC

The plaintiff has not alleged that his mistreatment was a result of any policy or practice maintained by Wexford of Indiana, LLC (Wexford). Wexford "cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by [its] employees. [It] can, however, be held liable for unconstitutional … policies or customs." *Simpson v. Brown County*, 860 F.3d 1001, 1005-6 (7th Cir. 2017) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978)). In the absence of any allegations of an unconstitutional policy or custom, the plaintiff's Eighth Amendment claims against Wexford are **dismissed**.

### F. Lost Property Claim

To the extent the plaintiff has alleged that his property was lost by any of the defendants, such claims are dismissed for failure to state a claim. The Fifth Amendment states "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend.

8

V. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. However, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). *See also Knick v. Twp. of Scott, Pennsylvania,* 139 S. Ct. 2162, 2174 (2019) ("It is not even possible for a State to provide pre-deprivation due process for the unauthorized act of a single employee." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981))).

Indiana's Tort Claims Act (Ind. Code § 34-13-3-1 et seq.) provides for state judicial review of property losses caused by government employees and provides an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due."); *Zinerman v. Burch,* 110 S. Ct. 975, 983 (1990) ("Deprivation of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law . . . . The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."). Because the plaintiff has an adequate state law remedy, the alleged deprivation of his property was not a constitutional violation.

### G. ADA and Rehabilitation Act Claims

The plaintiff alleges that GEO Group, Mrs. French, Mrs. Owens, Mrs. Hord, and Wexford failed to reasonably accommodate his physical impairments in violation of the Americans with Disabilities Act (ADA). The plaintiff has stated a claim under Section 504 of the Rehabilitation Act. Although the complaint cites only the ADA, "courts are supposed to analyze a litigant's claim and not just the legal theories that he propounds . . . especially when he is litigating pro se." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (holding that complaint stated claim for relief under Rehabilitation Act despite not citing it).

Title II of the ADA prohibits public entities from denying equal services to individuals because of their disabilities. *Discovery House, Inc. v. Concol. City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003). Specifically, Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As relevant here, Title II defines a "public entity" as "any State or local government, department, agency, special purpose district, or other instrumentality of a State or States or local government . . ." 42 U.S.C. § 12131(1).

Similarly, § 504 of the Rehabilitation Act states, "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794.

By accepting federal funds for its prisons, Indiana has waived sovereign immunity from suits for damages under the Rehabilitation Act. *See*, *e.g.*, *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012); *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000). In contrast, there are

thorny constitutional questions about whether a State may assert sovereign immunity against an ADA damages suit when the challenged conduct violates the ADA but not the Constitution. *United States v. Georgia*, 546 U.S. 151, 159 (2006).

Because the plaintiff may not recover under both the ADA and the Rehabilitation Act, and because the statutes are functionally identical for the plaintiff except for the question of sovereign immunity, the ADA claims are **dismissed**. *Jaros*, 684 F.3d at 672 ("As a practical matter, then, we may dispense with the ADA and the thorny question of sovereign immunity, since [the plaintiff] can have but one recovery."). Moreover, "employees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA," *Jaros*, 684 F.3d at 670, so the claims against Mrs. French, Mrs. Owens are **dismissed**. Because the claim is against the state, the **clerk is directed** to add the Indiana Department of Correction as a defendant. The claims against the GEO Group, Mrs. Hord, and Wexford of Indiana, LLC are **dismissed** as duplicative.

### H. Claims Which Shall Proceed

The claims which shall proceed as pleaded in the complaint are as follows:

- Eighth Amendment deliberate indifference and conditions of confinement claims, as well as state law negligence claims against Sgt. Seye, Sgt. Ndaiye, Ms. Moore, Mr. Moore, Mr. Betters, Ms. Gard, Mr. Reed, Mrs. Hord, and Mrs. Williams;
- An Eighth Amendment excessive force claim against Sgt. Ndaiye;
- A Rehabilitation Act claim against the Indiana Department of Correction; and
- An Eighth Amendment policy and practice claim against GEO Group.

This summary of remaining claims includes all the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged

in the complaint, but not identified by the Court, he shall have **through April 5, 2021,** in which to identify those claims.

## IV.
## Conclusion and Service of Process

The clerk is **directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Indiana Department of Correction, GEO Group, Sgt. Seye, Sgt. Ndaiye, Ms. Moore, Mr. Moore, Mr. Betters, Ms. Gard, Mr. Reed, Mrs. Hord, and Mrs. Williams in the manner specified by Fed. R. Civ. P. 4(d). Process shall consist of the complaint, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to add Indiana Department of Correction as a defendant on the docket and to terminate the Warden, NCCF, Mrs. French, Mrs. Owens, Capt. Adams, Wexford of Indiana, LLC, and all John and Jane Doe defendants as defendants on the docket.

Defendant Mrs. Hord and Mrs. Williams are identified as employees of Wexford of Indiana, LLC. A copy of this Order shall be served on Wexford electronically. Wexford is ORDERED to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information may be provided to the Court informally or may be filed ex parte.

**IT IS SO ORDERED.**

Date: _3/10/2021_

                                                SARAH EVANS BARKER, JUDGE
                                                United States District Court
                                                Southern District of Indiana

Distribution:

DANNY R. RICHARDS
866216
INDIANA STATE PRISON
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360

Electronic service to Indiana Department of Correction

Electronic service to Wexford of Indiana, LLC

Sgt. Seye
New Castle Correctional Facility
1000 Van Nuys Rd
New Castle, IN 47362

Sgt. Ndaiye
New Castle Correctional Facility
1000 Van Nuys Rd
New Castle, IN 47362

Ms. Moore
New Castle Correctional Facility
1000 Van Nuys Rd
New Castle, IN 47362

Mr. Moore
New Castle Correctional Facility
1000 Van Nuys Rd
New Castle, IN 47362

Mr. Betters
New Castle Correctional Facility
1000 Van Nuys Rd
New Castle, IN 47362

Ms. Gard
New Castle Correctional Facility
1000 Van Nuys Rd

13

New Castle, IN 47362

Mr. Reed
New Castle Correctional Facility
1000 Van Nuys Rd
New Castle, IN 47362

Mrs. Hord
New Castle Correctional Facility
1000 Van Nuys Rd
New Castle, IN 47362

Mrs. Williams
New Castle Correctional Facility
1000 Van Nuys Rd
New Castle, IN 47362